UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-23442-CIV-HUCK/O'SULLIVAN

JOY D. RUSSELL,

    Plaintiff,

vs.

PUBLIC HEALTH TRUST OF
MIAMI-DADE COUNTY, et al.,

    Defendants.
_____/

**OMNIBUS ORDER ON DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT**

    THIS CAUSE is before the Court upon the following Motions:

1)     Defendant Public Health Trust's Motion to Dismiss, filed December 31, 2008 (D.E. #9);

2)     Defendant Sandy Sears's Motion to Dismiss, filed December 31, 2008 (D.E. #11)[1]; and

3)     Defendants' Williams and Holewinski's Motion to Dismiss, filed December 31, 2008 (D.E. #13).

    In its Motion, Defendant Public Health Trust of Miami-Dade County ("the Trust") argues that the claims against it, raised in Counts I, II, and V, should be dismissed because (i) Plaintiff's alleged injuries were not the result of any custom or policy attributable to the Trust; (ii) the Trust does not receive federal funds for the primary purpose of providing employment; and (iii) Plaintiff has not suffered any materially adverse injury. In their Motion, Defendants Williams and Holewinski argue that the claims against them, raised in Counts III and V of the Complaint, should be dismissed because (i) no clearly established right exists under the Equal Protection Clause to be free from retaliation; (ii) Williams and Holewinski's alleged actions are not clearly established adverse

---

[1] Plaintiff voluntarily dismissed Count IV, which names only Defendant Sears (D.E. #22, attachment 3). Although Count V is raised as to "all Defendants," Plaintiff's counsel has informed the Court that Plaintiff's intention in dismissing Count IV against Sears was to drop Sears as a defendant in this case. Accordingly, Sears' Motion is denied as moot.

employment actions under § 1983; (iii) Williams and Holewinski are entitled to qualified immunity because their actions were motivated at least in part by objectively valid reasons; and (iv) the Complaint fails to state a claim against Williams and Holewinski under Title VI because individuals are not liable under that act.

The Court has reviewed the Motions, Plaintiff's Responses, the Defendants' Replies, and the pertinent portions of the record. For the reasons set forth below, the Trusts Motion is granted and Williams and Holewinski's Motion is granted in part and denied in part.

## I. PROCEDURAL AND FACTUAL BACKGROUND[2]

Plaintiff, Joy D. Russell, is a black, African-American woman. She graduated from the podiatry school at Barry University in 2007. Sometime in 2007, Russell was accepted by the podiatry residence program at Jackson Memorial Hospital North.[3] The Director of Podiatric Medical Education at Jackson Memorial is Defendant Marie Williams, a white female. Defendant Jean Holewinski, also a white female, is a faculty member of Jackson Memorial's podiatry residence program. At the time Russell filed her Complaint, she was the only black female in the podiatry residence program, and only one of two black students in the podiatry program.

The podiatry residence program is governed by the standards set forth by the Council on Podiatric Medicine Education ("CPME").[4] Compliance with the CPME standards, as adopted by the Trust, is required in order for the podiatry residence program to keep accreditation. The CPME standards require that residents rotate through various medical specialties under the supervision of

---

[2] As the factual allegations in a complaint must be taken as true when reviewing a motion to dismiss, this factual background is derived from Plaintiffs' Complaint.

[3] Jackson Memorial Hospital is operated by the Public Health Trust. *See* Chapter 25A, § 25A-1, of the Miami-Dade County Code. The Trust is a "a public body corporate and politic," created by the County Commission "as an agency and instrumentality of Miami-Dade County." *Id.* The Trust "may be modified or revoked in whole or in part by duly enacted ordinance of the Commission." Chapter 25A, § 25A-7, of the Miami-Dade County Code.

[4] "The Trust shall appoint the staff of physicians to practice in designated facilities and shall require that the bylaws, rules, and regulations of the medical staff of such facilities be submitted to the Board of Trustees for approval. Such bylaws, rules, and regulations shall be in accordance with the standards of all relevant accrediting organizations." Chapter 25A, § 25A-4(f), of the Miami-Dade County Code.

various attending physicians. These rotations include observing and participating in surgeries, and also assisting with emergency cases. Section 3.10 of the CPME standards requires that the "sponsoring institution must establish a written mechanism of appeal that ensures due process for the resident and the sponsoring institution, should there be a dispute between the parties." The CPME standards also require that the "sponsoring institution shall ensure that the resident is compensated equitably with and enjoys the same rights and privileges as other residents at the institution and/or in the geographic area." (CPME standard 3.7.)

At some point in Russell's first year of residency, Williams, allegedly due to racial animus, began to single Russell out for disparate and worse treatment than the non-black residents. Williams accused Russell of lying about patients when Russell made mistakes or misstatements about the patients Russell had seen. This was in contrast to Williams' treatment of other residents who, when making similar misstatements, had their misstatements dismissed as simply misunderstandings or mistakes. In Russell's second year of residency, Williams began to ostracize Russell from the activities of the podiatry residence program by refusing to allow Russell to attend meetings and surgeries. Williams also began to tell other physicians and residents that she thought Russell was incompetent.

At some point in the course of her study in the podiatry residence program, Russell was hospitalized due to stress. When questioned by Williams about her condition, Russell told Williams that she had some visual problems. Williams then told other physicians and residents that Russell was both incompetent and blind. Williams also stated that Russell could no longer participate in surgeries, but only could observe, because Williams found her to be a liability. Williams informed Russell that she could not teach her to be a surgeon, because Russell lacked the ability. Williams also stated that she was not going to allow Russell to graduate from the podiatry residence program with a full surgical licensure.

In September of 2008, Russell finally complained about Williams' treatment of her to the Senior Vice President of Jackson Memorial Hospital North, Sandy Sears. Sears told Williams that Russell filed a complaint against Williams, prompting Williams, along with Holewinski, to meet with Russell. Williams and Holewinski tried to convince Russell to withdraw her complaint. Williams threatened Russell that, should she persist in her complaint, she had "better be prepared

to defend herself." After Russell's complaint to Sears, the mistreatment of Russell by Williams and Holewinski increased. Both Williams and Holewinski barred Russell from attending surgeries and meetings, with Williams announcing that Russell was no longer part of the podiatry residence program. After Russell initially complained about Williams' treatment of her to Sears, Williams reported to Sears that she had put Russell on probation. This report, however, was based on false information and did not comply with the governing CPME standards.

As a result of Defendants' discriminatory actions, Russell was hospitalized for a second time. Additionally, Defendants' actions precluded Russell from participating fully in the podiatry residence program.

Russell filed a five count complaint against the Trust d/b/a Jackson Memorial Hospital North, Williams, and Holewinski.[5] Plaintiff initially sought damages and injunctive relief, however Plaintiff has since left the Jackson Memorial podiatry residence program to attend a residence program elsewhere. *See* Plaintiff's Status Report, D.E. #7. Accordingly, Plaintiff's request for injunctive relief was denied as moot. *See* Order Denying Motion for Preliminary Injunction, D.E. #8. The Trust and the Individual Defendants Williams and Holewinski moved separately to dismiss the claims brought against them in the Complaint. The Court now addresses these two motions in this Omnibus Order.

## II.  MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). "As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." *S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996).

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 335

---

[5] As discussed in footnote 1, Plaintiff has voluntarily dismissed Defendant Sears from this action.

U.S. 41, 47 (1957)). However, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Moreover, this circuit imposes a heightened pleading standard on claims under 42 U.S.C. § 1983 brought against individuals capable of asserting a qualified immunity defense. *See GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998); *Swann v. S. Health Partners, Inc.*, 388 F.3d 834 (11th Cir. 2004). Under the heightened pleading standard, the plaintiff must go beyond the notice pleading standard of Rule 8 and "allege with some specificity the facts which make out [his or her] claim." *GJR Invs.*, 132 F.3d at 1367. Indeed, "[s]ome factual detail in the pleadings is necessary to the adjudication of § 1983 claims" where the defendant may assert qualified immunity. *Id.*

### III. ANALYSIS

**A.    Defendant Public Health Trust of Miami-Dade County**

    1.    <u>The Complaint Fails to State a Claim for Relief under 42 U.S.C § 1983 against the Trust.</u>

In Counts I and II of her Complaint, Russell seeks to recover from the Trust for alleged violations of 42 U.S.C. § 1983. Russell claims that the acts alleged in her Complaint "evidence a pattern, practice and custom of racial discrimination and harasment by [the Trust] against black podiatric residents designed to intimidate Plaintiff and cause her to quit the [podiatric resident] program . . . ." (Compl., ¶¶ 30, 37.) Russell alleges that because "Defendants Williams and Holewinski are employees of [the Trust] with full power and control over Plaintiff Russell . . . both Defendants Williams and Holewinski are agents of [the Trust] and their acts constitute the acts of [the Trust]." *Id.*, ¶¶ 31, 38. The Court disagrees.

A "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). In other words, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.

5

Because merely employing a tortfeasor does not create liability, a plaintiff must show that her injury is the result of actions "which the municipality has officially sanctioned or ordered." *Mandel v. Doe*, 888 F.2d 783, 791 (11th Cir. 1989). To that end, for Russell to establish liability against the Trust on her § 1983 claims, she must be able to show "either: (1) that the unconstitutional deprivation was the result of a decision rendered by a final policymaker; or (2) that [she] was injured as the result of an unconstitutional policy or custom implemented or ratified by the [Trust]." *Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1358 (S.D. Fla.1999). "Under either avenue, [Russell] (1) must show that the local governmental entity . . . has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue." *Grech v. Clayton County, Ga*, 335 F.3d 1326, 1330 (11th Cir. 2003).

      a.     *Williams and Holewinski are not Official Policymakers*

The Trust argues that it cannot be held liable for any violations of 42 U.S.C. § 1983 in the present action because neither the individual defendants Williams or Holewinski are officials who speak for the Trust with the requisite final policymaking authority. Russell argues that Defendant Williams, as Medical Director of the Trust's podiatric program, "was the sole person in charge of seeing to it that the Trust fully complied with the [podiatric program] standards" and that "Williams was the singular decisionmaker with full control over the operation of the podiatric residency program." (Pl.'s Resp., ¶ 5.) The Trust readily acknowledges that Williams, as the Medical Director of the Trust's podiatric program, was a decisionmaker, if not a "final decisionmaker," but argues that there is an important distinction between a final *decisionmaker* and a final *policymaker*.

"The Eleventh Circuit has interpreted *Monell's* policy or custom requirement to preclude § 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion. Thus, final policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." *Quinn v. Monroe County*, 330 F.3d 1320, 1325 (11th Cir. 2003) (internal citations and quotations omitted). The distinction between final *decisionmaker* and final *policymaker* is crucial in determining when liability attaches to municipalities in § 1983 cases, because the "'final policymaker' inquiry

6

addresses who takes actions that may cause the municipality . . . to be held liable for a custom or policy. [Whereas] the 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held *individually* liable." *Id.* at 1326. Applying this reasoning, courts in the Southern District of Florida have "repeatedly recognized that final policymaking authority for Miami-Dade County rests with the Board of County Commissioners or the County Manager and the County therefore cannot be held liable under § 1983 for the discretionary acts of lesser officials." *Rosario v. Miami-Dade County*, 490 F. Supp. 2d 1213,1222 (S.D. Fla. 2007).

Although Williams, as the Director of Podiatric Medical Education at Jackson Memorial, may have had the authority to make decisions regarding podiatry residents' certifications, assignments, rotations, etc., Russell acknowledges that Williams' decisions were subject to review by Jackson Memorial Senior Vice President, Sandy Sears (Compl. ¶¶21, 22, 26, 27, 28, 51). For example, in her Complaint, Russell states that "Defendant Sears, as CEO of [Jackson Memorial Hospital North] with ultimate authority and control over [hospital] medical residency programs, including but not limited to the podiatric residency program, had full power and authority to prevent Defendants' Williams'and Holewinski's violations of Plaintiff's civil rights."  Compl., ¶ 51.[6] Additionally, provisions of the Miami-Dade County Code state that the Trust is a "a public body corporate and politic," created by the County Commission "as an agency and instrumentality of Miami-Dade County," which "may be modified or revoked in whole or in part by duly enacted ordinance of the Commission."  Miami-Dade County Code, Chapter 25A, §§ 25A-1, 25A-7. Accordingly, as Williams' decisions were immediately reviewble by Sears, with the Trust's ultimate policymaking authority vested in the County Commission, the Trust cannot be liable for violations of 42 U.S.C. § 1983 due to the actions taken by Williams or Holewinski.

      b.     *No Unconstitutional Policy or Custom Implemented or Ratified by the Trust*

Russell alleges that the podiatric residency program is governed by mandatory standards promulgated by the Council on Podiatric Medicine Education. (Compl. ¶ 13.) In her Response to the Trust's Motion to Dismiss, Russell argues that Williams was acting under color of state law when allegedly discriminating against her because she was "the sole person in charge of seeing to

---

[6] Although Plaintiff has voluntarily dismissed Count IV of the Complaint, she re-alleges this paragraph in Count V.

it that the Trust fully complied with the CPME standards." (Pl.'s Resp., p. 5.) Rather than bolster her claims, however, this allegation cuts in favor of finding no liability on the part of the Trust.

Compliance with the CPME is a requirement for the Jackson Memorial podiatry residence program to retain its accreditation. Under Standard 3.10 of the CPME standards, the podiatric residency program is required to have a "mechanism of appeal" that "ensures due process for the resident and the sponsoring institution, should there be a dispute between the parties." (Compl. ¶ 13.d, CPME standards, section 3.10). Additionally, the CPME standards require that the "sponsoring institution shall ensure that the resident is compensated equitably with and enjoys the same rights and privileges as other residents at the institution and/or in the geographic area." (CPME standard 3.7.) These are the standards governing operation of the Jackson Memorial podiatry residence program, and therefore comprise the policies of the Trust. *See* Chapter 25A, § 25A-4(f), Miami-Dade County Code (providing that "the bylaws, rules, and regulations of the medical staff . . . be submitted to the Board of Trustees for approval. [And that] such bylaws, rules, and regulations shall be in accordance with the standards of all relevant accrediting organizations.").

Although Williams may have been delegated broad powers to oversee the Trust's compliance with the CPME and to administer the podiatric residency program, there are no allegations in the Complaint that Williams' alleged discriminatory actions were in any way sanctioned by the Trust or Miami-Dade County. What is alleged is that Williams is responsible for keeping the podiatric residency program in compliance with the CPME. (Compl. ¶ 13.a.) To that end, any violation of the CPME standards by Williams or Holewinski would potentially put the accreditation of the Jackson Memorial podiatric residency program at risk, and thus would be contrary to the explicit nondiscriminatory policies of the Trust embodied in the CPME standards. Put another way, any discriminatory actions by Williams or Holewinski would not comply with the CPME standards, and therefore cannot fairly be said to represent an official policy of the Trust.

As discussed above, neither Williams nor Holewinski are the final policymaker for the Trust. Further, the alleged acts of discrimination directed at Russell by the individual Defendants, taken as true, would directly violate the Trust's policies as defined by the CPME. Accordingly, as Russell has failed (1) to identify "those officials who speak with final policymaking authority" for the Turst, and (2) failed to show an "unconstitutional policy or custom implemented or ratified" by the Trust,

her § 1983 claim against the Trust, Counts I and II, must be dismissed.

    2.    <u>Plaintiff Fails to Show that the Trust Received Federal Funds Intended for the Primary Purpose of Providing Employment as is Required to State a Claim under 42 U.S.C. § 2000d.</u>

In Count V of her Complaint, Russell seeks redress against all Defendants for violation of 42 U.S.C. § 2000d.

The Eleventh Circuit instructs that whether an employer receives federal funds for the primary purpose of providing employment is a threshold requirement for a litigant to raise a Title VI claim against an employer. *Jones v. Metropolitan Atlanta Rapid Transit Auth.*, 681 F.2d 1376 (11th Cir. 1982). As the Eleventh Circuit explains,

> Section 601 of the Civil Rights Act of 1964 (Title VI) [42 U.S.C. § 2000d][7] contains sweeping prohibitions against race discrimination by employers. Congress, however, placed significant restrictions upon the breadth of Section 601. Section 604 [42 U.S.C. § 2000d-3][8] authorizes a federal department or agency to maintain an action against employers to enforce Title VI only if the employer receives federal financial assistance and 'a primary purpose of the Federal financial assistance is to provide employment.' Thus in order to bring suit under Title VI, an employer must receive federal funds for purposes of providing employment.

*Id.* at 1378; *see also Ingram v. Morgan State University*, 74 F.3d 1232, 1996 WL 13861, *1 (4th Cir. 1996) ("Title VI claim fails because Appellant has not alleged that the Defendants receive federal financial assistance for the primary purpose of employment, or that she was the intended beneficiary

---

[7] Section 601 of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d, provides:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

[8] Section 604 of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d-3 provides:

> Nothing in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organizations except where a *primary objective of the Federal financial assistance is to provide employment*. (emphasis added.)

9

of any such assistance.").

Here, Russell's sole allegation related to federal funds received by the Trust is found in paragraph 5 of her Complaint, which reads: "Defendant [Trust] is a public hospital and medical center which, upon information and belief, is supported both by local, state and federal tax and/or grant moneys." This allegation falls short making the requisite *prima facie* case, as Plaintiff has not alleged that the Trust receive federal financial assistance for the primary purpose of employment.

As pointed out by the Trust, other courts have dismissed Title VI claims when the necessary allegations of federal funds primarily used for employment are missing. *See, e.g.*, *Temengil v. Trust Territory of Pacific Islands*, 881 F.2d 647, 653 (9th Cir. 1989) (dismissing Title VI counter-claim because "Plaintiffs' mere assertions do not satisfy their burden to establish that providing employment was a primary purpose of the program."); *Rosario-Olmedo v. Community School Bd. for Dist. 17,* 756 F. Supp. 95, 96 (E.D.N.Y. 1991) ("As a threshold requirement for an action under these sections, the federal funds allegedly giving rise to the action must have the 'primary objective' of providing employment. Courts have dismissed complaints for failure to specify when funds were received, what they were used for, and whether their primary objective was to provide employment."). Accordingly, as Russell has failed to make the required threshold allegations, Count V of her Complaint alleging violations of 42 U.S.C. § 2000d must be dismissed. However, dismissal will be *without prejudice*, so that Russell may make the requisite allegations if she can.

**B.     Individual Defendants Williams and Holewinski**

1.     No Individual Liability Under 42. U.S.C. §2000d

In Count V of her Complaint, Russell seeks redress against *all Defendants* for violation of 42 U.S.C. § 2000d. As an initial matter, as discussed in relation to Russell's claims against the Trust in section II.A.2 above, Plaintiff did not allege the threshold requirement that Defendants received federal funds for the primary purpose of providing employment. For this reason, Count V must be dismissed as to all Defendants.

The Court is dismissing Count V against the Trust without prejudice so that Plaintiff may plead, if she can, the allegations needed state a claim against the Trust for a violation of 42 U.S.C. § 2000d. However, as to the Individual Defendants, it is unlikely that Plaintiff can cure this deficiency through amending her Complaint. Courts "have generally concluded that individuals may

not be held liable for violations of Title VI because it prohibits discrimination only by recipients of federal funding." *Shotz v. City of Plantation*, 344 F.3d 1161, 1170 (11th Cir. 2003). "The Supreme Court has concluded that 'Congress limited the scope of § 504 [of the Rehabilitation Act, a related nondiscrimination provision with language virtually identical to that of Title VI,] to those who actually 'receive' federal financial assistance,' and the statute 'does not extend as far as those who benefit from it.'" *Id.* (quoting *United States Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986)).

In this case, the only allegation related to federal funding is that "Defendant [Trust] is a public hospital and medical center which, upon information and belief, is supported both by local, state and federal tax and/or grant moneys." (Compl., ¶ 5.) There are no allegations that either Williams or Holewinski received federal funds as contemplated under 42. U.S.C. §2000d. Indeed, as the Eleventh Circuit explains, such allegations may not be possible as "individual liability for violations of Title VI, would exceed the allowed scope of government enforcement action under the statute." *Shotz*, 344 F.3d at 1170. This is because the violation of Title VI must occur under a "program or activity" of a funding recipient. *Id.* Thus, because a Title VI claim can only be brought "against a grant recipient, . . . and not an individual, [i]t is beyond question, therefore, that individuals are not liable under Title VI." *Id.* at 1171.

Accordingly, for the reasons stated above, Plaintiff's claims against the Individual Defendants, Williams and Holewinski, in Count V must be dismissed with prejudice.

2. <u>Harassment, Discrimination, and Retaliation in Violation of 42 U.S.C. § 1983 Against Defendants Williams and Holewinski</u>

**1.     Heightened Pleading Requirement**

The Individual Defendants argue that the Eleventh Circuit has imposed a heightened pleading requirement on plaintiffs bringing Section 1983 claims against individual defendants. Indeed, this is the law. *See GJR Invs. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998) ("[W]hile Fed.R.Civ.P. 8 allows a plaintiff considerable leeway in framing its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim."). Pursuant to this heightened pleading standard, the Individual

Defendants argue that Plaintiff has offered nothing but conclusory allegations in her Complaint, and has not plead any supporting allegations with the specificity required to bring a § 1983 claim against the Individual Defendants in the Eleventh Circuit.

In reviewing the cases related to this heightened pleading requirement, it appears that Plaintiff's Complaint does have sufficient specifics as to Defendant Williams to withstand a motion to dismiss for lack of specifically plead facts. In *Lawson v. Curry,* 244 Fed. Appx. 986, 989 (11th Cir. 2007), for example, the Eleventh Circuit affirmed the district court's finding that the plaintiff had adequately pled her claims of racial discrimination. The court held that the plaintiff's complaint met the heightened pleading requirement because (1) "it advanced a readily intelligible legal arguments" that the individual defendants had violated the plaintiff's "right to be free from racial discrimination;" and (2) that the complaint "plead specific facts to support these claims, including facts about each defendant's particular conduct." *Id.* Here, Russell alleges unequal treatment at the hands of Williams by alleging, for example, that Williams "began to single Russell out for disparate and worse treatment than the other non-black residents" by "accusing Russell of lying about patients if Russell made any mistakes," while "chalk[ing] up similar mistakes . . . by other non-black residents as simply mistakes or misunderstanding." (Compl. ¶ 15.) Additionally, Russell alleges that "Williams began to ostracize Russell from activities" like refusing "to allow Russell to attend meetings, which Williams held in her office with the other residents during which they discussed patient cases, scholarly articles and professional updates, all part of the didactic teaching required by the standards." (Compl. ¶ 16.) Russell also alleges that Williams refused to allow Russell into surgeries (¶17), that Williams called Russell "blind and incompetent" (¶18, 19), and that Williams would not allow Russell to take emergency rotations any longer (¶ 23). On the face of the Complaint, there appears to be enough detail to support Russell claims under the heightened pleading standard that Williams has violated the Russell's right to be free from racial discrimination.

Russell's allegations, however, fall short of the heightened pleading requirement with regard to her claims against Defendant Holewinski. The only allegations of mistreatment by Holewinski appear in paragraphs 22 and 23 of the Complaint. There, Russell alleges that after Russell filed a complaint against Holewinski, Holewinski began to treat Russell poorly. Nowhere in her Complaint does Russell allege that Holewinski discriminated against her based on Russell's race or state any

other clearly identifiable cause of action against Holewinski. Indeed, a fair reading of the allegations of mistreatment by Holewinski, coming only after Russell filed a complaint against her with the Vice President of Jackson Memorial Hospital North, leads one to conclude that, if anything, Russell is attempting to make out a case for retaliation. As is explained immediately below, the right to be free from retaliation is not "clearly established" under the Equal Protection Clause. However, even if it were, the heightened pleading requirement in § 1983 cases is required so that defendants and the courts need not guess as to exactly what violation a plaintiff is alleging. Accordingly, as Russell has failed to meet the pleading requirement as to Defendant Holewinski, the claims against her must be dismissed. Dismissal is without prejudice, so that Plaintiff may attempt to re-plead her claims with the specificity required.

### 2. Retaliation Claim

"Once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal rights allegedly violated were clearly established." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir.1996). The Individual Defendants argue that the right to be free from retaliation is not a "clearly established" right protected under the Equal Protection Clause. The Individual Defendants are correct on this point. The Eleventh Circuit, as well as other circuit courts considering claims for retaliation brought via 42 U.S.C. § 1983, hold that the right to be free from retaliation is not a clearly established right protected under the Equal Protection Clause of the Fourteenth Amendment. *See, e.g.*, *Ratliff v. DeKalb County*, 62 F.3d 338, 341 (11th Cir. 1995) ("The right to be free from retaliation is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation."); *see also, e.g.*, *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("Although claims of retaliation are commonly brought under the First Amendment, and may also be brought under Title VII (claims of retaliation for complaints about racial discrimination are cognizable under 42 U.S.C. § 2000e-3(a)), we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination.").

Under this authority, it appears that Plaintiff cannot prevail on her retaliation claim under § 1983. Indeed, all that Plaintiff offers to meet the Individual Defendants' argument on this point is that "retaliation is, in fact, just another form of discrimination." (Pl.'s Resp., p. 4.) However,

Plaintiff offers no supporting case law for this assertion.  Accordingly, as Plaintiff has not met her burden of showing that the right to be free from retaliation is clearly established under the Equal Protection Clause, the retaliation claims in Count III must be dismissed.

### 3.     Discrimination

#### 1.     Not an Adverse Employment Action

The Individual Defendants next argue that Plaintiff has failed to state a discrimination claim under the Equal Protection Clause because she has failed to allege a violation of law.  Defendants argue that in order to state a claim for discrimination under the Equal Protection Clause, Russell must demonstrate an adverse employment action.  Defendants then go on to argue that the criticizing of Plaintiff's work performance is not actionable, that threats of termination are generally not considered actionable, and complaints about day-to-day work assignments do not establish adverse employment actions.  Plaintiff's response to the Individual Defendants' attack on her pleadings is rather perfunctory, ignoring the Individual Defendants' argument entirely, and only offering the remark that any denial by Individual Defendants that their treatment of Plaintiff did not violate her clearly established rights would be "objectively unreasonable."  Plaintiff offers no arguments as to what she thinks are the clearly established rights violated by the Individual Defendants, or how the Complaint makes a *prima facie* showing that those rights were indeed violated.  The best Plaintiff does in this respect is to state, in section E of her Response, that she was deprived "weeks and weeks" of training which she needed to become licensed and able to practice medicine in her chosen field.[9]

---

[9] In the future, the opposing party should thoroughly research and develop her arguments. "The premise of our adversarial system is that . . . courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). When parties do not fully develop their arguments and support them with citation to legal authority, the burden upon the Court is improperly increased. "[T]he onus is upon the parties to formulate arguments." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Generally, a "litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." *Phillips v. Hillcrest Medical Center,* 244 F.3d 790, 800 (10th Cir. 2001) (internal quotation omitted).

The issue the Court has with the Individual Defendant's argument, despite Plaintiff's cursory Response, is that the Individual Defendants are trying to couch Plaintiff's claims as claims for wrongful workplace discrimination. However, Plaintiff is not only an employee of Jackson Memorial, but is also a student of the podiatric residency program. In the cases cited by the Individual Defendants, the plaintiffs were complaining about discrimination related to adverse employment actions. *See, e.g.*, *Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008) (university human resources employee); *Anderson v. UPS*, 248 Fed. Appx. 97 (11th Cir. Ga. 2007) (United Parcel Service employees); *Davis v. Town of Lake Park*, 245 F.3d 1232, 1234 (11th Cir. Fla. 2001) (police officer). Here, Russell is complaining not about an adverse employment action, but about being denied the experiences needed to satisfy her training under the CPME standards. Plaintiff's Complaint is more aptly described as an action for racial discrimination in an education setting, not in the workplace.

In *Bell v. Ohio State Univ.*, 351 F.3d 240 (6th Cir. 2003), a student sued her school, alleging that the medical program had conspired to deprive her of her rights in violation of § 1983 by, among other things, requiring her to retake classes she had not passed. The court, in discussing the plaintiff's § 1983 claim for violation of her rights under the Equal Protection Clause, stated that "[t]o establish her prima facie case in the context of her contractual relationship with the Medical College, [Plaintiff] must provide evidence that (1) she is a member of a protected class; (2) she suffered an adverse action at the hands of the defendants in her pursuit of her education; (3) she was qualified to continue in her pursuit of her education; and (4) she was treated differently from similarly situated students who are not members of the protected class." *Id.* at 253.

In the case before the Court, Russell has alleged she is a member of a protected class (black); that she has suffered adverse actions (denial of certain necessary rotations in the medical program); that she is qualified to continue her training (Russell alleges that "there was no deficiency in her performance"); and that she was treated differently from other non-black students. It appears that Russell has adequately alleged a valid violation of the Equal Protection Clause under 42 U.S.C. § 1983 to the extent needed to survive the Individual Defendants' Motion to Dismiss. At the motion to dismiss stage, Plaintiff need only plead a prima facie case subject to the heightened pleading standards in § 1983 cases detailed above. Accordingly, as Plaintiff has plead a prima facie case of

discrimination against Defendant Williams, the Individual Defendants' Motion to Dismiss Count III in its entirety must be denied.

### 2. The Qualified Immunity Defense

Defendants next argue that, even if Plaintiff has properly alleged a violation under § 1983, they are entitled to the protection of qualified immunity because their actions were motivated by objectively valid reasons. Defendants argue that although the Complaint alleges that the Individual Defendants harbored unlawful motives when they took action against Russell, "the record shows that they had objectively reasonable motives for their actions as well–their observations of Russell's performance as a resident in a training program." (Individual Defs.' Mem. of Law in Supp. of Mot. to Dismiss, p. 14.)

Defendants are correct on the "mixed motives" point of law, as "[c]learly established law provides that state officials can be motivated, in part, by a dislike or hostility toward a certain protected class to which a citizen belongs and still act lawfully. Thus, state officials act lawfully despite having discriminatory intent, where the record shows they would have acted as they, in fact, did act even if they had lacked discriminatory intent." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1283 (11th Cir.2008). However, the Individual Defendants fall short in their argument because, at present, the Court is constrained to looking only at Russell's Complaint and the attached CPME standards to support the Individual Defendants claim of "mixed motives." *See Boyd v. Peet*, 249 Fed. Appx. 155, 157 (11th Cir. 2007) ("[A]t the motion to dismiss stage, the scope of a court's review must be limited to the four corners of the complaint."). As detailed below, the allegations in the Complaint simply do not support the argument that Williams or Holewinski had objectively reasonable motives for their actions.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 808 (1982), the Supreme Court discussed the importance that qualified immunity played in rooting out insubstantial lawsuits as early as possible, stating that "[i]nsubstantial lawsuits can be quickly terminated by federal courts alert to the possibilities of artful pleading. Unless the complaint states a compensable claim for relief . . . , it should not survive a motion to dismiss." (quoting *Butz v. Economou*, 438 U.S. 478, 507-508 (1978)). The Court then went on to discuss the course that cases that are insubstantial, but nonetheless subject to a defense of qualified immunity might take. The Court stated "that damages suits concerning

constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity. . . . In responding to such a motion, plaintiffs may not play dog in the manger; and firm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits." (quoting *Butz,* 438 U.S. at 507-508).  In reviewing the Individual Defendants' Motion to Dismiss, the Court is mindful that "[q]ualified immunity thus represents the rule, rather than the exception: Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *GJR Investments, Inc. v. County of Escambia, Fla,.* 132 F.3d 1359, 1366 (11th Cir. 1998) (internal quotations omitted).  However, the Court is also mindful that, at the motion to dismiss stage, its review of the record is limited to a review of the Complaint and any supporting documents only.  *Boyd*, 249 Fed. Appx. at 157.

As detailed above, Plaintiff has made a prima facie complaint supporting a violation of the Equal Protection Clause.  The Individual Defendants argue, nonetheless, that they are entitled to qualified immunity because the record shows that they had objectively reasonable motives for taking their allegedly adverse actions.  Although this may ultimately prove to be the case, at this stage in the litigation, the only evidence of the Individual Defendants' objectively reasonable motives must come from the four corners of Plaintiff's Complaint.  *Boyd*, 249 Fed. Appx. at 157.  In her Complaint, Plaintiff alleges that Williams refused to allow Russell to observe surgeries and attend meetings as required by the CPME standards because of Russell's race. (Compl., ¶¶ 15-18.)  Russell alleges that there was no deficiency in her performance (*id*, ¶ 18), and that Williams falsely informed the Vice President of Jackson Memorial that Russell was on probation (*id*, ¶ 18).  Russell also alleges that she was never told her performance was lacking and that she was on probation (*id*).  Plaintiff's allegations, taken as true, do not demonstrate an objectively reasonable motive for the actions taken by Defendant Williams other than the alleged racial animus.  Indeed, Russell's allegations show that Williams's statements that Russell was lying and incompetent were false and motivated by her dislike for black students.

Again, the Court is conscious that "courts should think long and hard before stripping defendants of immunity." *GJR Investments,* 132 F.3d at 1366.  The Court has given all the Defendants' Motions to Dismiss a careful and thorough review.  It may very well be that, once

discovery is taken, or after affidavits are submitted, the factual record supporting an objectively reasonable motive for the Individual Defendants' actions will emerge. However, at the motion to dismiss stage, the record—Plaintiff's Complaint—cannot support the Individual Defendants's assertion that the evidence supports that this "is at worst a mixed-motives case."[10] (Individual Defs.' Mem. of Law in Supp. of Mot. to Dismiss, p. 17.) Accordingly, the Individual Defendants' Motion to Dismiss on mixed-motives grounds must be denied.

### IV. CONCLUSION

For the reasons stated above, it is hereby

ORDERED AND ADJUDGED that

1.  Defendant Public Health Trust's Motion to Dismiss (D.E. #9) is granted. Counts I and II are dismissed with prejudice. Count V is dismissed against the Trust without prejudice, so that Plaintiff may make the requisite allegations if she can.

2.  Defendant Sandy Sears's Motion to Dismiss(D.E. #11) is denied as moot.

3.  Defendants' Williams and Holewinski's Motion to Dismiss (D.E. #13) is granted in part and denied in part. The retaliation claims in Count III are dismissed with prejudice. The remainder of Count III is dismissed as to Holewinski without prejudice so that Plaintiff may attempt to re-plead her claims against Holewinski with the specificity required. Count V is dismissed against both Williams and Holewinski with prejudice.

4.  Plaintiff has until April 16, 2009 to file her amended complaint.[11]

DONE in Chambers, Miami, Florida, April 6, 2009.

_____
Paul C. Huck
United States District Judge

---

[10] The Court notes that in every case cited by the Individual Defendants for support in their "mixed-motive" section of their Memorandum, the qualified immunity issue was decided either at the summary judgment stage of the proceedings or on appeal after trial.

[11] The Court reminds Plaintiff and her counsel of Rule 11(b)(3), requiring that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

<u>Copies furnished to</u>:
Magistrate Judge John O'Sullivan
Counsel of Record